*Decision will be entered under Rule 50.*

RENTON INVESTMENT COMPANY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102109. Promulgated February 10, 1942.

*W. A. Seifert, Esq., W. W. Booth, Esq.,* and *A. G. Wallerstedt, C. P. A.,* for the petitioner.
*Bernard D. Daniels, Esq.,* for the respondent.

OPINION.

OPPER: Petitioner's liability to tax as a personal holding company under Revenue Act of 1936, Title I A, is litigated here not on account of the character of petitioner's income, but solely on the question whether 50 percent of petitioner's stock was "owned directly or indirectly by or for not more than five individuals."[1]

An affirmative conclusion is resisted on two grounds: That while record ownership of well over 50 percent of petitioner's stock was ultimately and through intervening titles held in the names of not more than five individuals, considering as one those within the family relationship definition of section 354,[2] nevertheless, due to various circumstances, these individuals were not collectively the real owners of the

---

[1] SEC. 352. [As amended by Revenue Act of 1937.] DEFINITION OF PERSONAL HOLDING COMPANY.

(a) GENERAL RULE.—For the purposes of this title and of Title I the term "personal holding company" means any corporation if—

(1) * * *

(2) STOCK OWNERSHIP REQUIREMENT.—At any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals.

[2] SEC. 354. STOCK OWNERSHIP.

(a) CONSTRUCTIVE OWNERSHIP.—For the purpose of determining whether a corporation is a personal holding company, insofar as such determination is based on stock ownership under section 352 (a) (2), section 353 (e), or section 353 (f)—

(1) STOCK NOT OWNED BY INDIVIDUAL.—Stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust shall be considered as being owned proportionately by its shareholders, partners, or beneficiaries.

(2) FAMILY AND PARTNERSHIP OWNERSHIP.—An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family or by or for his partner. For the purposes of this paragraph the family of an individual includes only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants.

(3) OPTIONS.—If any person has an option to acquire stock such stock shall be considered as owned by such person. For the purposes of this paragraph an option to acquire such an option, and each one of a series of such options, shall be considered as an option to acquire such stock.

(4) APPLICATION OF FAMILY-PARTNERSHIP AND OPTION RULES.—Paragraphs (2) and (3) shall be applied—

(A) For the purposes of the stock ownership requirement provided in section 352 (a) (2), if, but only if, the effect is to make the corporation a personal holding company;

(B) For the purposes of section 353 (e) (relating to personal service contracts), or of section 353 (f) (relating to use of property by shareholders), if, but only if, the effect is to make the amounts therein referred to includible under such subsection as personal holding company income.

(5) CONSTRUCTIVE OWNERSHIP AS ACTUAL OWNERSHIP.—Stock constructively owned by a person by reason of the application of paragraph (1) or (3) shall, for the purpose of applying paragraph (1) or (2), be treated as actually owned by such person; but stock constructively owned by an individual by reason of the application of paragraph (2) shall not be treated as owned by him for the purpose of again applying such paragraph in order to make another the constructive owner of such stock.

requisite amount of stock within the meaning of the stock ownership requirement of section 352; and, second, because the title of these individuals was not direct but stemmed through several corporations, including an operating company, a situation to which the statute is said to be inapplicable at least in the absence of a motive to escape surtaxes.

The latter contention can perhaps best be summarized in the language of petitioner's brief: "Petitioner contends that the applicable sections of the Revenue Act are penal in nature being expressly designed for the purpose of penalizing corporations which permitted their earnings to accumulate, thus avoiding imposition of a surtax upon their shareholders; that petitioner was not formed for any such purpose and no tax has been lost to respondent through the formation and operation of petitioner; that the act does not specifically authorize respondent to go or look through an operating parent to its stockholders to determine whether a subsidiary is a so-called personal holding company; and being a penal section it is not to be extended to any degree beyond its expressed purpose or intent." We may note in passing that there is not the slightest evidence but that petitioner was in fact availed of to avoid surtax upon its shareholders or the shareholders of another corporation.[3] All that petitioner says on this subject is "even if Union [the parent] had made a taxable distribution to Bessemer [its controlling stockholder] and Bessemer had made a taxable distribution to its stockholders [the Loves], where on this record could the respondent have collected any surtax? All the Loves [the individuals determined by respondent to constitute the controlling group] were hopelessly insolvent and it can safely be assumed that their interest deductions would have exceeded their dividend income." In the absence of evidence, and there is none, that is a violently unsafe assumption for the Board to make regardless of what it may be for petitioner; and the whole contention thus narrows to an attempt on petitioner's part to profit by a failure of proof where it has the burden. But in any event, we think that the legislative history of Title I A, as quoted in petitioner's brief, contains statements which demonstrate that this position may not be sustained. One of the purposes of enacting section 351, which was the forerunner of Title I A, was "to provide for a tax which will be automatically levied upon the holding company without any necessity for proving a purpose of avoiding surtaxes." Report, Revenue Act of 1934, Ways and Means Committee, H. R. No. 704, 73d Cong., 2d sess., p. 12. Since section 354 (a) (1)[4] requires that stock be traced through intervening corporations if necessary, but makes no distinction between holding and operating companies in that tracing process,

[3] See Revenue Act of 1936, sec. 102.
[4] *Supra,* note 2.

and since the history of the legislation denies the necessity of scrutinizing motives, we must reject petitioner's argument on this point.

The contention that the individuals did not, in fact, own the stock within the meaning of Title I A is predicated generally upon the proposition that they or their estates were insolvent, that some of the Bessemer stock was pledged, and that hence the true owners of the stock were the pledgees and creditors and not the record owners. We may well agree with petitioner that the aim of the statute was to reach beyond mere naked legal title and to come to grips with the real beneficial owners. This is suggested at least by the provisions of section 354 (a) (1) requiring the penetration of such impersonal entities as corporations and trusts to find the real parties in interest. It does not follow, however, that a person is not the beneficial as well as the legal owner of his property merely because it is pledged, or even because of insolvency. Such circumstances may provide the means by which the debtor can be deprived of both legal and equitable ownership. But until some action has been taken by the creditors, we can not say that a future possibility is so nearly the equivalent of a present fact that the mere potentiality of tomorrow's foreclosure or bankruptcy destroys the ownership that certainly and indisputably exists today. See *City Bank Farmers' Trust Co.* v. *Bowers* (C. C. A., 2d Cir.), 68 Fed. (2d) 909; certiorari denied, 292 U. S. 644; *Frank Kuhn*, 34 B. T. A. 274; *Lavenstein Corporation* v. *Commissioner* (C. C. A., 4th Cir.), 25 Fed. (2d) 375. Petitioner is asking us to add to the provisions of 354 (a) (1) attributing to the interested individuals the ownership of stock held by corporations, trusts, and the like, a command that the property of debtors shall be considered that of their creditors. This would be a clearly unwarranted extension if we were being asked to hold a mere creditor to be a present owner in computing the 50 percent ownership required to apply the statute; we think it equally out of the question to give the statute such a construction in order for its application to be avoided.

In the case of J. K. Love and Russell C. Love, that is the full extent of petitioner's contention. The estate of F. S. Love is also asserted to be insolvent. Its residue was bequeathed to the testator's wife and daughter, after specific legacies to other relatives. Petitioner contends that these people were not "beneficiaries" of the estate within the meaning of section 354 (a) (1) and did not, therefore, proportionally own the stock of the estate since the latter was insolvent and the creditors would take the stock to the exclusion of the legatees. To the extent that this is a further argument related to the definition of "beneficiaries" in the statute, we think it must also be rejected. "Beneficiaries" is obviously used as in *pari materia* with "stockholders" and "partners." A partner or a shareholder is none the less so because the partnership or corporation may happen to be insolvent; and we

think the same must be said as to the beneficiary of an estate or trust. As long as the stock was held by the estate, those having the beneficial interest therein are necessarily to be viewed as the owners under the plain terms of the statute. It is also urged that since the financial condition of the estate was so unfavorable, efforts to allocate the stock between specific and residuary legatees would be hopeless, with the consequence that we can not tell who were in fact the beneficiaries as far as this stock ownership is concerned. But under the family ownership provisions of 354 (a) (2), that is a matter of no consequence insofar as concerns our present problem. Precisely who would take the stock upon the termination of administration, so long as all are within the group which is considered as one person, is immaterial, for it can have no effect upon the result.

The same applies to a contention with respect to a trust created by Frank S. Love during his lifetime for the benefit of his daughter. Since she is included with her mother as a single person, it is of no moment whether the stock be considered as belonging to the estate on the one hand or to the *inter vivos* trust on the other.

Still another contention requires consideration as to a considerable block of stock pledged with a bank as security for the fulfillment of an indemnity agreement by several of the Loves. The argument is that, since the indemnity was admittedly due, all the pledgors' interest had in effect been forfeited to the pledgee and the former were no longer the owners of the stock. The difficulty is that the original agreement permitted the Loves to vote the stock and receive the dividends thereon until it should be seized and sold by the pledgee, and this had not happened at any time during the period decisive here. The stock was in fact voted by the Loves and for all that this record shows any dividends paid by Bessemer on that stock were received by them. Under the circumstances it is impossible to reach the conclusion that their interest included so little of the rights attributable to stockholders that they can be disregarded as owners of the stock.

Finally, there is the stock which E. M. Love had pledged with two national banks and which, to the extent of 2,150 shares, is said to have been transferred outright to the Comptroller of the Currency and the receivers of the banks during the first half of the year 1937. This is the most persuasive of any of the situations upon which petitioner relies. But, even if we were to hold, as we would be inclined to do, that as to this block of stock not one of the five persons concerned was the owner at any time during the period to which the statute makes reference, that would still leave more than the requisite number of shares in the ownership of the statutory stockholding group and such a determination in petitioner's favor would be of no benefit to it. No matter how this point is decided, therefore, the conclusion on the whole case must be that at all times "during the last half of the taxable year

more than 50 per centum of the value" of petitioner's outstanding stock was "owned directly or indirectly by or for not more than five individuals" and, since the other requirements of the title are conceded, that petitioner is a personal holding company under Title I A, Revenue Act of 1937.

As far as we can see there is nothing unreasonable or pointless in such an application of this provision. If petitioner had distributed its income the object of the legislation would have been achieved, at least to the extent that the intervening companies likewise made distributions so that the ultimate receipt by an individual stockholder possibly liable to surtax would have been accomplished. For all that this record shows, such a course of events, necessarily dependent upon petitioner's initiative, would have resulted in the collection of increased surtaxes from at least some of the individuals to whom the stock belonged. This is the very core and kernel of the end for which these provisions were designed. It is certainly not unreasonable that a failure to bring about the object contemplated by the statute should result in an application of the penalty devised to discourage that failure. Such a result can scarcely justify a charge of unconstitutionality. *Helvering* v. *National Grocery Co.*, 304 U. S. 282; *Foley Securities Corporation* v. *Commissioner*, 106 Fed. (2d) 731 (C. C. A., 8th Cir.).

As to the penalty for delinquent filing, there is no evidence of the cause for the original default. We have been told why the overdue return was ultimately filed. If that is to be construed as a backhanded showing of the reason it was not filed sooner, the implied excuse is still insufficient. Mere misapprehension as to the scope of petitioner's obligation is no exculpation for the failure to perform it, at least where the statutory compulsion has reached so respectable an age. *R. Simpson & Co.*, 44 B. T. A. 498.

*Decision will be entered under Rule 50.*