Phanor J. Eder, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Violet L. Eder, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

James P. Eder, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 106016–106018.   Promulgated June 30, 1942.

*Richard W. Wilson, Esq.,* for the petitioners.
*Loren P. Oakes, Esq.,* for the respondent.

OPINION.

LEECH: The petitioners attack the contested determination only on the ground that section 337 of the Revenue Act of 1938,[1] under which that determination was made, is not applicable here.

[1] SEC. 337. CORPORATION INCOME TAXED TO UNITED STATES SHAREHOLDERS.

(a) GENERAL RULE.—The undistributed Supplement P net income of a foreign personal holding company shall be included in the gross income of the citizens or residents of the United States, domestic corporations, domestic partnerships, and estates or trusts (other than estates or trusts the gross income of which under this title includes only income from sources within the United States), who are shareholders in such foreign personal holding company (hereinafter called "United States shareholders") in the manner and to the extent set forth in this Supplement.

(b) AMOUNT INCLUDED IN GROSS INCOME.—Each United States shareholder, who was a shareholder on the day in the taxable year of the company which was the last day on which a United States group (as defined in section 331 (a) (2)) existed with respect to the company, shall include in his gross income, as a dividend, for the taxable year in which or with which the taxable year of the company ends, the amount he would have received as a dividend if on such last day there had been distributed by the company, and received by the shareholders, an amount which bears the same ratio to the undistributed Supplement P net income of the company for the taxable year as the portion of such taxable year up to and including such last day bears to the entire taxable year.

\*        \*        \*        \*        \*        \*        \*

(e) EFFECT ON CAPITAL ACCOUNT OF FOREIGN PERSONAL HOLDING COMPANY.—An amount which bears the same ratio to the undistributed Supplement P net income of the foreign personal holding company for its taxable year as the portion of such taxable year up to and including the last day on which a United States group existed with respect to the company bears to the entire taxable year, shall, for the purpose of determining the effect of distributions in subsequent taxable years by the corporation, be considered as paid-in surplus or as a contribution to capital and the accumulated earnings and profits as of the close of the taxable year shall be correspondingly reduced, if such amount or any portion thereof is required to be included as a dividend, directly or indirectly, in the gross income of United States shareholders.

(f) BASIS OF STOCK IN HANDS OF SHAREHOLDERS.—The amount required to be included in the gross income of a United States shareholder under subsection (b) shall, for the purpose of adjusting the basis of his stock with respect to which the distribution would have been made (if it had been made), be treated as having been reinvested by the shareholder as a contribution to the capital of the corporation; but only to the extent to which such amount is included in his gross income in his return, increased or decreased by any adjustment of such amount in the last determination of the shareholder's tax liability, made before the expiration of seven years after the date prescribed by law for filing the return.

They argue from the legislative history of supplement P of that act, of which section 337 is a part, that the Congressional intent was that the tax be imposed only upon "a comparatively few wealthy individuals" who "voluntarily and willfully" avoided or evaded their income taxes by the use of foreign personal holding companies, and that the tax was therefore wrongfully laid upon them, since they were neither wealthy nor were they voluntarily or willfully using the Colombian Co. to avoid or evade such taxes. We disagree with that construction of the act.

It may be admitted that such use of foreign personal holding companies was the inspiration for this legislation. But neither supplement P, generally, nor the clear and unambiguous language of section 337, *supra*, specifically indicates in any way that the intention or financial status of the taxpayer should affect the imposition of the tax in the slightest degree. Cf. *Olean Times Publishing Co.*, 42 B. T. A. 1277. In these circumstances, as the Supreme Court said in *Caminetti* v. *United States*, 242 U. S. 470, that language "* * * must be taken as the final expression of legislative intent and * * * [is] not to be added to or subtracted from by considerations drawn from titles or designating names or reports accompanying their introduction, or from any extraneous source." See also *Helvering* v. *City Bank Farmers Trust Co., Trustee*, 296 U. S. 85.

Petitioners next contend that the disputed tax is imposed upon the theory of "constructive receipt" of the taxed "assumed distributions" by the taxpayer shareholders and that, since petitioner shareholders in the United States could not have transferred from the Republic of Colombia during 1938 any distributions from the Colombian Co. in excess of those that were so transferred and received, because of the exchange restrictions in effect during that year in the Republic of Colombia, they did not constructively receive the assumed distributions of undistributed earnings of that company upon which the deficiencies are based. This contention is likewise unsound and for the same fundamental reasons.

Pesos could have been distributed legally to or for the account of the petitioners in Colombia and those pesos could have been invested legally there. The Colombian Co. did distribute to and petitioners actually received in 1938 in United States dollars and paid income taxes on such distributions in excess of the amounts permitted by the exchange laws and regulations then in force in the Republic of Colombia. However, we pass those circumstances, as well as consideration of subsections 337 (e) and (f), *supra*.

Congress believed foreign personal holding companies were being used by United States taxpayers to avoid or evade their income taxes and that it could not tax such companies. Report of Ways and Means

Committee, H. Rept. No. 1546, 75th Cong., 1st sess. By section 337 of supplement P of the Revenue Act of 1938 it therefore proceeded to tax the "assumed distribution" of dividends by those companies in the hands of their United States stockholders. See Report of Ways and Means Committee, *supra*. The power to permit or deny the legal distribution of the funds of those foreign companies was plainly in the hands of the foreign governments under the jurisdiction of which such companies existed. It certainly may not be presumed that Congress did not know of this power and the then existing exchange restrictions upon which petitioners rely. See Introduction to the Report of the U. S. Tariff Commission to the Ways and Means Committee of the House of Representatives, 1934. In enacting section 115 (c) (2) of the same revenue act with which we are here concerned, Congress expressly provided for an exception based upon the laws of a foreign country. But, in enacting section 337, *supra*, and supplement P, in which that section is included, legal transfer to the United States of its distributed earnings by the foreign personal holding company was not made a condition precedent to the laying of the tax. Nothing there appears remotely suggesting that foreign laws or regulations may affect the imposition of the tax. See *Burnet* v. *Harmel*, 287 U. S. 103. Cf. *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46.

It is difficult to believe that such legislation would have been proposed or passed if it had been believed by Congress or those suggesting the legislation that such a tax could be imposed under the well recognized and simple doctrine of "constructive receipt." In fact, if the existence of foreign laws or regulations restricting the transfer of dividends to the United States by foreign personal holding companies had been made a condition precedent to the laying of taxes under section 337, *supra*, the admitted purpose of the legislation would have been largely indirectly defeated.

Assumed distribution, even when actual distribution was legally impossible, has been held to properly support other income taxes. So, the distributive share of a partner in the income of a partnership neither distributed nor legally distributable was held to have been properly taxed to a partner under section 218 (a) of the Revenue Act of 1918. *Heiner* v. *Mellon*, 304 U. S. 271. See also *Mary Clark de Brabant*, 34 B. T. A. 951; affd., 90 Fed. (2d) 433.

*International Mortgage & Investment Corporation*, 36 B. T. A. 187, involving the taxability to a United States taxpayer of his "blocked" German marks in Germany, *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, and other cases upon which petitioners rely, are not in point. They were all decided squarely under the doctrine of "constructive receipt" and are not premised upon any specific legislation, as are the present deficiencies.

*Decision will be entered for the respondent.*