RENTON INV. CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 8008.

Circuit Court of Appeals, Third Circuit.

Argued July 17, 1942.

Decided Nov. 6, 1942.

William Wallace Booth, of Pittsburgh, Pa. (W. A. Scifert, of Pittsburgh, Pa., on the brief), for petitioner.

Ellis N. Slack, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and Arthur A. Armstrong, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before MARIS and JONES, Circuit Judges, and LEAHY, District Judge.

JONES, Circuit Judge.

The Commissioner of Internal Revenue assessed a deficiency in surtax and penalty against the petitioner for the year 1937 on the basis that it was a personal holding company. The Board of Tax Appeals sustained the assessment and the matter is now before us for review on the taxpayer's petition. The question here involved is whether the petitioner was a personal holding company within the contemplation of Secs. 352, 353 and 354 of the Act of 1936 as amended by the Act of 1937, c. 815, § 1, 50 Stat. 813.[1]

As defined by Sec. 352(a), a "personal holding company" means any corporation (1) at least 80 per centum of whose gross income for the taxable year consists of dividends, etc., as specified by Sec. 353, and (2) more than 50 per centum in value

---

[1] Secs. 352, 353 and 354 of the Revenue Act of 1936 as amended by the Act of 1937, 26 U.S.C.A. Int.Rev.Acts, pages 938, 940 and 973–975, provide as follows in part here material:

"Sec. 352. Definition of Personal Holding Company.

"(a) General Rule.—For the purposes of this title and of Title I the term 'personal holding company' means any corporation if—

"(1) Gross income requirement.—At least 80 per centum of its gross income for the taxable year is personal holding company income as defined in section 353; * * *

"(2) Stock ownership requirement.—At any time during the last half of the tax-able year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals.

*    *    *    *    *

"Sec. 353. Personal holding company income.

"For the purposes of this title the term 'personal holding company income' means the portion of the gross income which consists of:

"(a) Dividends, interest, royalties (other than mineral, oil, or gas royalties), annuities.

*    *    *    *    *

"Sec. 354. Stock ownership.

"(a) Constructive Ownership.—For the purpose of determining whether a corpo-

of whose outstanding stock, at any time during the last half of the taxable year, is owned, directly or indirectly, by or for not more than five individuals. Sec. 354 recognizes and prescribes the use of constructive and family ownership in determining an individual's ownership of corporate stock; and, as defined by Sec. 354(a) (2), the family of an individual includes "only his brothers and sisters * * *, spouse, ancestors, and lineal descendants."

It is an established fact in this case, and readily so conceded, that 80 per centum of the petitioner's gross income for the taxable year in question was derived from dividends. Whether the petitioner was a personal holding company within the intendment of the statute necessarily depends, therefore, upon whether five or less individuals, ascertained as the Act provides, owned more than 50 per centum of the value of the petitioner's outstanding stock at any time during the last half of the taxable year.

Under the circumstances obtaining with respect to the petitioner's outstanding stock, the Commissioner found it necessary to trace constructively the ultimate ownership thereof by individuals. This he did upon the following basis and in the following manner: "All of it '[petitioner's outstanding stock] was owned by Union Collieries Company, another corporation. A third corporation, Bessemer Coal & Coke Corporation, owned 65.539% of the Union Collieries stock, which represented the same percentage of taxpayer's stock. Bessemer had 19,776 of its own shares outstanding and the holders of those shares must, under the statute, be deemed to proportionately own the 65.539% of taxpayer's stock. Thus 50/65.539 of the 19,776 Bessemer shares, or 15,087 Bessemer shares, would represent half of taxpayer's stock; and one more share or 15,088 shares [of Bessemer stock] all told, would need to be owned by five or fewer individuals to meet the statutory test of a·personal holding company." Respondent's Brief, pp. 11-12.

Union Collieries, as the Board found, was an operating company engaged in mining and selling bituminous coal. The Board also found that "There was no thought, idea, or intention of incorporating petitioner for the purpose of avoiding or evading surtaxes upon its stockholders or any other person." The petitioner urges that Title IA of the Revenue Act of 1936, as amended by the Revenue Act of 1937, does not authorize the Commissioner to look through a parent operating company to its stockholders to determine whether a subsidiary is a personal holding company, without proof of a purpose to avoid tax. If proof of an intent to avoid or evade surtaxes were requisite under the particular circumstances, then we would need go no further in view of the Board's express finding in such regard.

■ The petitioner, however, cites us no case in support of this contention. It does make incidental reference to the case of Mead Corporation v. Commissioner, 3 Cir., 116 F.2d 187, 191, but the decision in the Mead case was expressly rested upon the restrictive wording of Sec. 104(a) of the Revenue Act of 1928, 26 U.S.C.A. Int.

---

ration is a personal holding company, insofar as such determination is based on stock ownership under section 352(a) (2) * * *

"(1) Stock not owned by individual.—Stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust shall be considered as being owned proportionately by its shareholders, partners, or beneficiaries.

"(2) Family and partnership ownership.—An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family or by or for his partner. For the purposes of this paragraph the family of an individual includes only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants.

* * * * *

"(4) Application of family-partnership and option rules.—Paragraphs (2) and (3) shall be applied—

"(A) For the purposes of the stock ownership requirement provided in section 352 (a) (2), if, but only if, the effect is to make the corporation a personal holding· company;

* * * * *

"(5) Constructive ownership as actual ownership.—Stock constructively owned by a person by reason of the application of paragraph (1) or (3) shall, for the purpose of applying paragraph (1) or (2), be treated as actually owned by such person; but stock constructively owned by an individual by reason of the application of paragraph (2) shall not be treated as owned by him for the purpose of again applying such paragraph in order to make another the constructive owner of such stock."

Rev.Acts, page 375, which provided for a levy of a tax of 50 per centum of the net income of "any corporation * * * formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders,"—a prescription which was extended by amendment in the Revenue Act of 1934, § 102, 26 U.S.C.A. Int.Rev. Acts, page 690 to include "the shareholders of any other corporation," etc. We held in the Mead case that the exclusory term, "its shareholders", meant the holders of the stock of the taxpayer and not the shareholders of the taxpayer's corporate stockholder. We are unable to perceive wherein the ruling in the Mead case is pertinent to the provision of the Revenue Act of 1936 as amended. The latter enactment is not restrictively phrased. As written it permits of no distinction between the kind of intermediate corporations through which the stock ownership may be traced.

█ In Girard Inv. Co. v. Commissioner, 3 Cir., 122 F.2d 843, 844, where Sec. 351 (b) of the Revenue Act of 1934, 26 U.S. C.A. Int.Rev.Acts, page 757, was involved, we rejected the argument that the plain and specific words of the statute should be disregarded on the basis of the general intention that they be not applied to operating companies. See, also, American Package Corp. v. Commissioner, 4 Cir., 125 F.2d 413, 416, 140 A.L.R. 642, which involved Secs. 352 and 353 of the Revenue Act now under consideration, and also Noteman v. Welch, 1 Cir., 108 F.2d 206, 209, 210, wherein it was held that Sec. 351 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 757, could not be construed to exempt personal finance companies even though they might be legitimate operating companies formed for no purpose of tax evasion. In O'Sullivan Rubber Co. v. Commissioner, 120 F.2d 845, 847, 848, the Court of Appeals for the Second Circuit observed that, in enacting Title IA of the Revenue Act of 1934, Congress intended to do away with the necessity of proving that the purpose of a particular incorporation was to avoid surtaxes. The reports of the Committees of the Senate and House on the 1934 Revenue Act plainly stated the congressional desire to avoid

inquiries into the purpose of an incorporation. See Senate Report No. 558, 73rd Cong., 2nd Sess., p. 15, 1939—1 Cum.Bull. (Part 2) pp. 586, 597, and House Report No. 704, 73rd Cong., 2nd Sess., 1939—1 Cum.Bull. (Part 2) pp. 554, 563. Nor is there anything apparent in the phraseology of the subsequent Revenue Act of 1936 as amended by the Revenue Act of 1937 or the reports thereon by congressional committees which indicates any intent to change the law in the particular under consideration. In our opinion, the Commissioner's action in tracing the ownership of the petitioner's outstanding stock through the operating company (Union Collieries Company) to the stockholders of Bessemer was authorized by the statute.

We come then to consider whether five or less of the stockholders of Bessemer (so held to be stockholders of the petitioner) owned directly or indirectly, more than 50 per centum of the petitioner's outstanding stock. Among the family groups (owning Bessemer stock) which the Board found constituted individuals within the meaning of the statute was Rebecca L. Love (widow of Frank S. Love, deceased) and her daughter, Rebecca F. Love. The mother owned in her own right, as the Board found, 5,400 shares of Bessemer. In addition thereto. she and her daughter were held by the Board to be the constructive owners of 1,055 shares [2] each, which represented the 3,110 shares of Bessemer stock standing in the name of Frank S. Love (then deceased) less 1,000 shares thereof which Love in his lifetime had transferred to trustees in trust for his daughter but which the trustees had allowed to remain of record in his name.

Frank S. Love had died September 26, 1933, leaving a last will in which he made a number of specific bequests of $5,000 to each of eight persons therein named and whereby he constituted Rebecca L. Love and Rebecca F. Love the residuary legatees of his estate under terms not here material. As the Board found, "The estate of F. [Frank] S. Love was insolvent. The entire estate was used to pay administration expenses, secured debts, and taxes. No distribution was made to gen-

[2] The Commissioner corrects the finding of the Board (see Respondent's Brief, p. 4) which had made this allocation 980 shares of Bessemer to each, the mother and daughter, because of a mistake in treating 150 shares of Bessemer stock transferred to the receiver of the Monongahela National Bank as having been transferred from the estate of Frank S. Love, deceased, instead of from his brother, E. M. Love, as was the case.

eral and unsecured creditors, nor to the legatees named in the will. Respondent [the Commissioner] received a distribution of only $10,713.57 on his preferred claim of $71,741.46, exclusive of interest, for a deficiency in 1927 income taxes." The Board concluded, however, that the residuary legatees under the will of Frank S. Love were none the less "beneficiaries" within the meaning of Sec. 354(a) (1) although they received nothing from the decedent's estate, and that consequently the Bessemer stock held by the executors of Love's estate was constructively owned by Rebecca L. Love and Rebecca F. Love. As they constituted a family group to be considered as one individual under Sec. 354 (a) (2), the Board consequently held that the requirements of Sec. 352 were satisfied.

It is the petitioner's contention that stock standing in the name of a decedent whose estate is hopelessly insolvent cannot be owned constructively by the legatees named in the decedent's will and that the legatees under the will of a testator whose estate is insolvent cannot justifiably be considered as "beneficiaries" within the meaning of that term in Sec. 354(a) (1). This contention seems to us to be sound for reasons which will appear later.

The petitioner makes a number of other contentions, some of which are now conceded by the respondent and the remainder of which need not be considered in the view we take of this case. The concessions (Respondent's Brief, p. 17) which are of immediate importance in their effect upon the extent of the holdings of Bessemer stock by five individuals are as follows:

"We shall begin by suggesting two corrections in this grouping [by the Board]. The first is to eliminate 2,150 of the 2,950 shares listed in the name of E. M. Love. The Board virtually conceded and we do not deny that before the beginning of the crucial period (the last half of 1937) ownership of these had been finally transferred to creditors of E. M. Love in settlement of claims. This change leaves the total of shares owned by the five statutory individuals at a figure substantially in excess of the minimum of 15,088.

"Next, 239 shares should be taken out of the 1,939 shares listed for Russell C. Love, and divided equally between Rebecca L. Love and Rebecca F. Love as beneficiaries of the estate of Frank S. Love. These had been bought in by the estate dur-

ing the first half of 1937. (Taxpayer's br. 19a) This change, in our view of the case does not affect the total shares owned by the five statutory individuals."

The effect of the Commissioner's concessions as above quoted is, first, to withdraw 2,150 shares of Bessemer stock from the number of shares held by the "five statutory individuals", thus reducing the figure from 19,186 shares, as found by the Board, to 17,036 shares (which obviously, is still in excess of the minimum requirement of 15,088 shares), and, second, to increase from 2,110 to 2,349 the number of shares of Bessemer stock in the insolvent estate of Frank S. Love which the Board charges to Rebecca L. Love and Rebecca F. Love and about which the controversy revolves. If, however, Mrs. Love and her daughter are not "beneficiaries" within the meaning of the statute, then the number of shares of Bessemer held by the five statutory individuals is to be still further reduced by 2,349 shares which would leave 14,687 shares held by the five statutory individuals or less than 50 per centum of the equivalent outstanding stock of the petitioner. The petitioner could not, therefore, be deemed a "personal holding company" under the specifications of Sec. 352(a) (2).

■ The crucial question, then, is whether the legatees under an insolvent testator's will (who acquire no part of his estate) are "beneficiaries" within the intent of Sec. 354(a) (1). The parties cite us to no direct or controlling authority in this connection and it is believed that the meaning of the word "beneficiaries" as used in the statute is one of first impression. The Commissioner relies primarily upon the reasoning of the Board of Tax Appeals that the shareholders of a corporation and the partners of a partnership would necessarily be considered the owners of the corporate or partnership assets, regardless of insolvency, under the plain terms of the statute. From this as a premise, the Commissioner argues that the legatees of an insolvent estate are the owners of the estate's assets and hence "beneficiaries". Such, however, is neither a logical nor a reasonable deduction. In the case of stockholders and partners, ownership of the assets is actually vested in the corporation or the partnership and so remains, despite insolvency, until steps are taken to divest that ownership. In the case of a legatee of an insolvent estate, ownership of the assets never be-

comes vested in him until there is a fund available, after payment of the testator's debts, for distribution on account of the legacy. The will of a testator vests nothing in volunteers where there is nothing left to vest. The Commissioner cites us to Helvering v. Southwest Consolidated Corp., 315 U.S. 194, 62 S.Ct. 546, 86 L.Ed. 789, which involved a reorganization under Sec. 112 (g) (1) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 695. We fail to see where anything said in that case has any bearing upon the question with which we are here concerned.

■ The Commissioner also argues that "beneficiaries" does not mean "creditors". As much may be readily conceded but it does not follow from that that "beneficiaries" means legatees where the legatees receive nothing and can receive nothing because the testator's estate is insolvent. Constructive ownership is not to be imputed where the established facts will not support even a reasonable inference of substantial ownership or interest. We think that Congress in providing for the ascertainment of stockholders by construction meant to reach persons with an interest or an equity in the shares regardless of the legal title thereto. The word "beneficiaries" should therefore be taken to embrace the recipient or one who will become the recipient of a benefit in the shares of the subject corporation.

■ The words of a tax statute are to be given their ordinary or popular meaning in preference to any technical or curious meaning that may be discovered. Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484. Webster's New International Dictionary (2nd ed.) defines a "beneficiary" as " * * * One who receives anything as a gift; one who receives a benefit or advantage; the recipient of another's bounty * * *." And the courts have given the word a similar meaning. In Girard Trust Co. v. Newhall, 138 Pa.Super. 203, 207, 10 A.2d 58, 60, the court said that a " 'beneficiary' is one receiving benefit or advantage, or one who is in receipt of benefits, profits or advantage." And in Bauer v. Myers, 8 Cir., 244 F. 902, 908, a beneficiary was defined as one who receives a benefit or advantage or who is in receipt of benefits. See, also, Parrott Estate Co. v. McLaughlin, D.C.N.D.Cal., 12 F.Supp. 23, 25 where it was said that a beneficiary is one who is entitled to the benefits of property, legal possession of which is in another.

■ Obviously, a distinction is to be noted between a beneficiary and a legatee. In re Welsh's Will, 272 N.Y. 184, 5 N.E.2d 192, 195. Whether or not a legatee becomes a beneficiary depends upon whether or not there is any estate to distribute on account of his legacy. In Pennsylvania (the domicile of Frank S. Love, deceased), as well as elsewhere generally, a legatee of an insolvent estate takes nothing by reason of his testamentary bequest. This is clearly set forth in Blake's Estate, 134 Pa. 240, 249, 250, 19 A. 850, where the Supreme Court of Pennsylvania said: "After these [the debts] are all paid, and not until then, can the directions of the testator in regard to the distribution of his estate be heard; and they take effect only upon what remains after the settlement of his estate, and the payment of his debts. * * * The law imposes the duty to pay the debts; the testator, that to pay legacies. The executors must discharge the first if they have assets sufficient for that purpose. They must discharge the last after the first is fully performed."

■ It is a fact in this case and so found by the Board that there was nothing whatsoever in the Frank S. Love estate wherewith to pay even general creditors. The secured creditors, including the respondent received in final payment out of the estate only a fraction of their claims. And, ahead of the residuary legatees, there were still the eight specific legacies of $5,000 each, none of which, of course, was paid. To hold that Rebecca L. Love and Rebecca F. Love as residuary legatees were the individual owners of the Bessemer stock in the estate of Frank S. Love as the beneficiaries thereof would be to espouse a fiction that could hardly be farther from reality both in fact and in substance. Such a result, we feel, could flow only from a misinterpretation of the statute and not from the intent of Congress. So concluding, it follows that the five statutory individuals as found by the Board own no more than 14,687 shares of Bessemer stock, which represents less than 50 per centum of the petitioner's equivalent outstanding stock. The petitioner was therefore not a "personal holding company" within the specifications of Sec. 352(a) (2).

The decision of the Board of Tax Appeals is reversed.