OPINION. Black, Judge: The question involved in these proceedings is whether the Commissioner was correct in including 95 per cent of the undistributed Supplement P net income of Hekor, a Canadian corporation, for the years 1951, 1953, and 1954,[2] in the gross income of petitioner, a United States citizen, for those years. The Commissioner’s determinations were made pursuant to Supplement P (secs. 331-340) [3] which generally taxes United States shareholders on their proportionate part of the undistributed Supplement P net income of a foreign personal holding company. A foreign personal holding company, under section 331(a), is any foreign corporation if (1) it meets a certain gross income test, and (2) “[a]t any time during the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals who are citizens or residents of the United States.” It is agreed that Hekor meets the gross income test; the controversy revolves around the stock ownership test. Petitioner disputes the correctness of respondent’s determination that he is taxable on Hekor’s undistributed Supplement P net income for the years in question. His first and one of his main contentions is that Hekor was not a foreign personal holding company under section 331 (a) (2). He argues that this is so because during the taxable years not more than 50 per centum in value of Hekor’s outstanding stock was owned by or for not more than five individuals who were citizens or residents of the United States. In support of this position he contends that for the purposes of section 331(a) (2) beneficial interest and control over the stock, rather than bare legal title thereto, is determinative. Section 331(a) (2) reads as follows: SEC. 331. DEFINITION OF FOREIGN PERSONAL HOLDING COMPANY. (a) General Rule. — For the purposes of this chapter the term “foreign personal holding company” means any foreign corporation if — ■ [[Image here]] (2) Stock ownership requirement. — At any time during the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals who are citizens or residents of the United States, hereinafter called “United States group.” The stipulation of facts, which was filed, and has been incorporated by reference in our Findings of Fact, contains a paragraph which reads as follows: 23. On September 8, 1951 petitioner became the holder and owner of the 9,500 shares of Hekor stock formerly owned by Raymond Patenotre or his estate. He (petitioner) continued to own said shares thereafter throughout the period involved, the remaining 500 shares being owned by Pierre du Pasquier. We think the foregoing stipulation forecloses petitioner on the question of the ownership of “more than 50 per centum in value” of Hekor’s outstanding stock during the taxable years. True, the stipulation does not state that the 9,500 shares in question constituted more than “50 per centum in value” of Hekor’s outstanding stock. But it is also true that the stipulation says that the only other stockholder of Hekor during the period in question was Pierre du Pasquier, a citizen and resident of France, who owned only 5 per cent of Hekor’s outstanding stock. Certainly, under ordinary circumstances, where 95 per cent of the outstanding stock of a foreign corporation was owned by a resident of the United States and only 5 per cent was owned by a citizen and resident of a foreign country it would be true that “more than 50 per centum in value” of the corporation’s outstanding stock would be owned by a resident of the United States. We have no evidence in the record before us which would justify us in making a finding that du Pasquier’s 5 per cent of Hekor’s outstanding stock had such a value that, although petitioner owned the remaining 95 per cent of such outstanding stock, petitioner’s 9,500 shares did not constitute “more than 50 per centum in value” of Hekor’s outstanding stock. We have made no such finding of fact nor can we make such a finding on the record which we have before us. We are willing to accept the correctness of petitioner’s contention that when the statute speaks of the ownership of “more than 50 per centum in value” of the outstanding stock of a corporation it means “beneficial ownership.” Nevertheless, when the parties stipulate that from September 8,1951, petitioner was the holder and owner of 95 per cent of Hekor’s outstanding stock, we must assume that by the use of the word “own” the parties meant to include beneficial ownership as well as ownership of the bare legal title. We do not think that there is sufficient evidence in the record to justify us in making a finding otherwise. It is true that the Treasury was asserting liens against the 9,500 shares in question, as well as liens against the assets of Hekor, but we do net think that these facts made the Treasury the beneficial owner of the 9,500 shares of stock of Hekor, which it is stipulated petitioner owned on September 8,1951, and during the rest of the period in question. Both parties cite and comment upon Renton Investment Co., 46 B.T.A. 279, revd. 131 F. 2d 330 (C.A. 3). We have carefully read that case, both the opinions of our Court and that of the Third Circuit but we do not find that case helpful to a decision of the question we have here to decide. It involved facts altogether different from those which are present in the instant case. We, therefore, do not discuss that case. We think, in view of the stipulation in the record as to petitioner’s ownership, that such ownership was “more than 50 per centum in value” of Hekor’s outstanding stock. This being true, Hekor was a foreign personal holding company within the meaning of section 331(a)(2) during the period in question. We so hold. Petitioner’s next contention is that the statutes involved are not to be so construed as to tax petitioner a “deemed” distribution from Hekor under the factual circumstances here involved. In other words, that notwithstanding petitioner comes within the literal terms of the statute, we should hold that Congress did not intend that it should be applied to one occupying the situation of petitioner. Section 337 reads as printed in the margin.[4] As we have already stated, it has been stipulated that on September 8, 1951, petitioner became the holder and owner of 9,500 of Hekor’s 10,000 outstanding shares. The Commissioner has included in petitioner’s income for the years 1951,1953, and 1954, 95 per cent of Hek- or’s undistributed Supplement P net income. This seems to be in accordance with the terms of section 337 printed in the margin, unless it be for the year 1951, as to which petitioner urges an alternative contention which will be hereinafter discussed. If we assume that the result, if so applied, may be harsh as petitioner contends, that fact would not be sufficient justification for us to say that Congress did not intend that section 837 should apply to a taxpayer occupying the situation of petitioner. Cf. Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46. In this contention, petitioner is not sustained. Among the other contentions made by petitioner against the determination of the Commissioner are that if the foreign personal holding company provisions are held applicable to petitioner and he is held taxable on the undistributed Supplement P net income of Hekor, then the statutes as thus applied are unconstitutional because they deprive petitioner of property without due process of law in violation of the fifth amendment to the United States Constitution, and also because such applications of the statutes violate the 16th amendment to the Constitution. We have carefully considered petitioner’s arguments in support of his contentions as above stated. We have concluded that none of these contentions is valid. Cf. Helvering v. Northwest Steel Rolling Mills, supra. In that case the taxpayer contended that if the statute was construed as the Commissioner contended it should be, then such construction would violate the fifth, 10th, and 16th amendments. The Supreme Court held that none was valid. Petitioner’s contentions with respect to the constitutional questions are not sustained. Petitioner makes the contention in the alternative that even though Hekor is considered to be a foreign personal holding company, he, for 1951, cannot be required to include in gross income, as undistributed Supplement P net income of that corporation, an amount greater than 95 per cent of that which arose after September 8, 1951. It has been stipulated that— 27. From January 1, 1951 to September 8, 1951, the gross income o£ Hekor amounted to $48,426.42, its allowable deductions from gross income amounted to $2,888.78, and the Federal income tax withheld on its income to that date amounted to $6,716.19. From September 8, 1951 to December 31, 1951, the gross income of Hekor amounted to $34,026.64, its allowable deductions from gross income amounted to $6,236.52, and the Federal income tax withheld on its income amounted to $5,047.77. Therefore, it can be seen that if petitioner’s alternative contention is sustained, it will be possible to compute the amount of Hekor’s Supplement P net income for the shorter period in 1951 embraced in petitioner’s alternative contention. In Mary A. Marsman, 18 T.C. 1, we had a somewhat similar issue before us for decision in what was termed in that case “Issue 2.” In discussing that issue, we pointed out that throughout the taxable year 1940 the taxpayer was the sole stockholder of a foreign personal holding company whose taxable year was the calendar year 1940. During most of the taxable year she was a nonresident of the United States. However, on September 22, 1940, she became a resident of the United States. It was the taxpayer’s contention that she was only taxable on that part of the foreign personal holding company Supplement P net income which was attributable to the period September 22, 1940, to December 31, 1940. The Commissioner had determined that she was taxable on the Supplement P net income of the corporation for the entire taxable year. We sustained the Commissioner. In this holding, we said: The fact that such sole stockholder was a resident of the United States on the last day of the company’s taxable year is sufficient to subject him to the requirement of reporting as a dividend received the full amount of the company’s undistributed net income for Said year which remained undistributed on; the last day of its taxable year. Our decision in the Marsman case was reversed by the Fourth Circuit in Marsman v. Commissioner, 205 F. 2d 335. In reversing us on this point the court, among other things, said: Since the last day in this ease is the last .day of the year 1940, Mrs. Marsman would be required to include in her gross income the Supplement P net income of La Trafagona for the entire year, if the language of the section is to be given' a strictly literal interpretation. We do not think, however, that the statute should be applied literally and without reference to the purpose for which it was admittedly enacted. * * * The Commissioner in his brief in the instant case relies upon our decision in the Marsman case but contends, assuming the correctness of the Fourth Circuit’s reversal of the Marsman case, that nevertheless it is not controlling here because it is distinguishable on its facts. It is the feeling of our Court that the Court of Appeals for the Fourth Circuit, if this case is appealed, may want to consider the alternative issue in the light of the factual situation in the present case as compared to that in Marsman v. Commissioner, supra, and with that in mind the Tax Court will not decide this case for the petitioner on the reversal of the Marsman case. We will decide it on what we conceive to be the meaning of the statute. Section 337(b) provides: (b) Amount Included in Gross Income.' — -Each United States shareholder, who was a shareholder on the day in the taxable year of the company which was the last day on which a United States group (as defined in section 331(a) (2)) existed with respect to the company, shall include in his gross in'come, as a dividend, for the taxable year in which or with which the taxable year of the company ends, the amount he would have received as a dividend if on such last day there had been distributed by the company, and received by the shareholders, an amount which bears the same ratio to the undistributed Supplement P net income of the company for the taxable year as the portion of such taxable year up to and including such last day bears to the entire taxable year. [Emphasis supplied.] As we Rave heretofore said, it has been stipulated that on September 8, 1951, petitioner became the owner and holder of 9,500 shares of Hekor’s stock out of 10,000 outstanding shares and owned it throughout the periods here in question. Therefore, we think that under the terms of the statute just quoted petitioner is taxable on 95 per centum of Hekor’s undistributed Supplement P income for the year 1951. We so hold. It may well be, as petitioners contend, that to so hold produces a harsh result. However, we do not think that fact warrants us in giving the statute a construction which does not seem warranted by what seems to be its plain meaning. See Phanor J. Eder, 47 B.T.A. 235, reversed on another point Eder v. Commissioner, 138 F. 2d 27. We think, if the result be harsh, that the remedy is within the province of Congress to enact a change in the law and that it is not within our province to change it by construction. Reviewed by the Court. Decisions will he entered for the respondent. [2] Hekor Rad no Supplement P net income for 195&; accordingly, the Commissioner made no determination for that year. [3] The Commissioner’s determination for 1954 was made pursuant to part III (secs. 551—558), subch. G, ch. 1, I.R.C. 1954. Insofar as here involved' these provisions are substantially similar and their effect the same as the applicable provisions of the 1939 Code. In these circumstances we will only refer to the applicable provisions of the 1939 Code. SEC. 337. CORPORATION INCOME TAXED TO UNITED STATES SHAREHOLDERS. .(a) General Rule. — The undistributed Supplement P net income of a foreign personal holding company shall be included in the gross income of the citizens or residents of the United) States, domestic corporations, domestic partnerships, and estates or trusts (other than estates or trusts the gross income of which under this chapter includes only income from sources within the United States), who are shareholders in such foreign personal holding company (hereinafter called “United States shareholders”) in the manner and to the extent set forth in this Supplement. (b) Amount Included in Gross Income. — Each United States shareholder, who was a shareholder on the day in the taxable year of the company which was the last day on which a United States group (as defined in section 331(a)(2)) existed with respect to the company, shall include in his gross income, as a dividend, for the taxable year in which or with which the taxable year of the company ends, the amount he would have received as a dividend if on such last day there had been distributed by the company, and received by the shareholders, an amount which bears the same ratio to the undistributed Supplement P net income of the company for the taxable year as the portion of such taxable year up to and including such last day bears to the entire taxable year.